SEBRING v CITY OF BERKLEY

Docket No. 217274. Submitted March 13, 2001, at Detroit. Decided October 2, 2001, at 9:00 A.M. Leave to appeal sought.

Wendy A. Sebring brought an action in the Oakland Circuit Court against the city of Berkley and the Oakland County Road Commission, seeking damages for injuries sustained when she slipped and fell over irregularities in the improved portion of a roadbed that also happened to be within a crosswalk implied by the connection of the lateral lines of the sidewalks on opposite sides of the roadbed. The court, Steven N. Andrews, J., granted summary disposition in favor of the road commission under MCR 2.116(C)(7), on the ground that because the fall occurred within a crosswalk, as defined by MCL 257.10(a), the highway exception to governmental immunity, MCL 691.1402(1), did not apply. The court also granted summary disposition in favor of the city under MCR 2.116(C)(7) on the ground that the road commission, not the city, had jurisdiction over the area in which the plaintiff fell. The plaintiff appealed.

The Court of Appeals held:

1. The "other installations" exclusion in the fourth sentence of the highway exception creates a categorical distinction between two different types of crosswalks, i.e., between a crosswalk that really is an installation separate from the roadbed (e.g., an elevated walkway) and a crosswalk that exists simply as an area within the roadway.

2. When a pedestrian alleges that the dangerous defect was in the improved portion of the highway that also happens to be within the crosswalk, the plaintiff's claim is not barred by governmental immunity.

3. The highway exception applies here because the plaintiff alleged that she tripped and fell over a dangerous condition in the crosswalk and the crosswalk here is not an installation separate from the roadbed. The court erred in dismissing the case with regard to the road commission. That part of the order must be reversed.

4. The governmental immunity act limits liability under the highway exception to the governmental agency having jurisdiction over the highway at the time of the injury. Only one governmental

agency at a time can have jurisdiction over a highway; there is no concurrent jurisdiction. The court properly granted summary disposition in favor of the city on the basis that the county road commission had jurisdiction over the crosswalk where the plaintiff fell. That part of the order must be affirmed.

Affirmed in part and reversed in part.

1. GOVERNMENTAL IMMUNITY — HIGHWAYS — CROSSWALKS.

A plaintiff's claim against a governmental agency for damages for injuries sustained when the plaintiff, while a pedestrian, tripped and fell over a dangerous condition in the improved portion of a highway that also happens to be within a crosswalk is not barred by governmental immunity where the crosswalk exists simply as an area within the roadway rather than as an installation separate from the roadbed, e.g., an elevated walkway (MCL 691.1402[1]).

2. GOVERNMENTAL IMMUNITY — HIGHWAYS — JURISDICTION.

The governmental immunity act limits liability under the highway exception to the governmental agency having jurisdiction over the highway at the time of the injury; because only one governmental agency at a time can have jurisdiction over a highway, there is no concurrent jurisdiction (MCL 691.1402[1]).

*James McKenna*, for the plaintiff.

*O'Connor, DeGrazia & Tamm, P.C.* (by *Julie McCann O'Connor* and *James I. DeGrazia*), for the city of Berkley.

*Potter, Carniak, Anderson & DeAgostino* (by *Steven M. Potter* and *Rick J. Patterson*), for Oakland County Road Commission.

Before: DOCTOROFF, P.J., and HOLBROOK, JR., and HOEKSTRA, JJ.

HOLBROOK, JR., J. Plaintiff appeals as of right from the trial court's order granting summary disposition in favor of defendants city of Berkley and Oakland County Road Commission pursuant to MCR 2.116(C)(7) on the basis of governmental immunity. The court rejected plaintiff's argument that the high-

way exception to governmental immunity was applicable to either defendant. We affirm in part and reverse in part.

Plaintiff testified during her deposition that she was walking east on a sidewalk that ran parallel to Twelve Mile Road when she reached the intersection at Robina Street in the city of Berkley. Plaintiff alleges that when she tried to cross Robina Street, she tripped and fell over defects in the pavement. Plaintiff averred that while there were not any marked pedestrian crosswalk lines on the highway where she fell, she was in fact walking from one side of Robina Street to the other. The trial court granted summary disposition to defendant Oakland County Road Commission under MCR 2.116(C)(7) on the ground that because plaintiff's fall occurred within a crosswalk, as defined by MCL 257.10(a), the highway exception to governmental immunity, MCL 691.1402(1), did not apply. The court granted defendant city of Berkley summary disposition under the same court rule on the ground that defendant Oakland County Road Commission had jurisdiction over the area in which plaintiff fell.

We agree with plaintiff that with respect to defendant Oakland County Road Commission (hereinafter road commission), the trial court improperly ruled that her action was barred by governmental immunity. At the time of plaintiff's accident, the highway exception provided, in relevant part:[1]

---

[1] Plaintiff's accident allegedly occurred on May 31, 1996. Effective March 25, 1996, the statutory language at issue was amended by 1996 PA 150.

Each governmental agency having jurisdiction over a highway shall maintain the highway in reasonable repair so that it is reasonably safe and convenient for public travel. A person sustaining bodily injury or damage to his or her property by reason of failure of a governmental agency to keep a highway under its jurisdiction in reasonable repair, and in condition reasonably safe and fit for travel, may recover the damages suffered by him or her from the governmental agency. The liability, procedure and remedy as to county roads under the jurisdiction of a county road commission shall be as provided in section 21 of chapter IV of Act No. 283 of the Public Acts of 1909, as amended, being section 224.21 of the Michigan Compiled Laws. The duty of the state and the county road commissions to repair and maintain highways, and the liability for that duty, extends only to the improved portion of the highway designed for vehicular travel and does not include sidewalks, crosswalks, or any other installation outside of the improved portion of the highway designed for vehicular travel.

Just last year, in *Nawrocki v Macomb Co Rd Comm*, 463 Mich 143; 615 NW2d 702 (2000), our Supreme Court set for itself the goal of clarifying the meaning of the highway exception. *Id.* at 150.[2] The resulting opinion significantly redirected the course of case law on the subject. The Court observed that prior case law had produced "an exhausting line of confusing and contradictory decisions" that, in turn, "have created a rule of law that is virtually impenetrable, even to the most experienced judges and legal practitioners." *Id.* at 149. Instead of attempting to reconcile this body of law, the Court indicated that it was "return[ing] to a narrow construction of the high-

---

[2] We believe that the reasoning in *Nawrocki* is instructive, even though the language of the highway exception at issue in that case is different from the exception applicable here. Each of the differences is minor and does not undermine the soundness of the *Nawrocki* analysis.

way exception predicated upon a close examination of the statute's plain language . . . ." *Id.* at 150.

The specific question we must address and decide with respect to defendant road commission is whether a county road commission is immune from tort liability for injuries suffered by a pedestrian who slips and falls over irregularities in the improved portion of the roadbed that also happen to fall within a crosswalk implied by the connection of the lateral lines of the sidewalks that fall on opposite sides of the roadbed. The conundrum that stands at the heart of this matter occurs when the roadbed designed for vehicular travel and the crosswalk both exist within the same "narrowly defined location prescribed by the fourth sentence" of the highway exception. *Id.* at 163.

Defendant road commission argues that this question has been definitively answered by case law. Specifically, the county relies on *Suttles v Dep't of Transportation*, 457 Mich 635; 578 NW2d 295 (1998), and *Mason v Wayne Co Bd of Comm'rs*, 447 Mich 130; 523 NW2d 791 (1994), amended 451 Mich 1236 (1996). *Suttles* involved consolidated appeals arising from two separate accidents where the injured parties were pedestrians. *Id.* at 638-640. Defendant road commission specifically cites the holding in the companion case to *Suttles, Brown v Dep't of Transportation*, 457 Mich 635; 578 NW2d 295 (1998), reh gtd 459 Mich 1228 (1998), app dis 459 Mich 1228 (1999), which, in turn, relied on the holding in *Mason.*

Initially, we note that neither *Brown* nor *Mason* involved a plaintiff who was injured by an alleged dangerous defect in the pavement of a crosswalk. In *Brown*, the plaintiff's "next friend was injured when

she was struck by an automobile while crossing
M-119 on a crosswalk." *Suttles, supra* at 653. Despite
this significant factual dissimilarity between *Brown*
and the case presently before us, defendant road
commission cites the following passage in the lead
opinion in that case as supporting the trial court's
granting of summary disposition in its favor:

> The mandate of MCL 691.1402(1) . . . is clear: Neither the
> state nor a county owes a duty to a pedestrian while the
> pedestrian is in a crosswalk. The issue was decided by this
> Court in *Mason*, and we would specifically reaffirm that
> holding today. Because it is undisputed that plaintiff's next
> friend was injured while she was in the crosswalk, neither
> the state nor the county owed her a duty. [*Id.* at 653-654.]

Defendant road commission argues that pursuant
to this reading of MCL 691.1402(1), plaintiff cannot
maintain her cause of action because her testimony
establishes that she was in the Robina Street cross-
walk when she was injured. We disagree. This reading
of MCL 691.1402(1) was only supported in the lead
opinion by two of the justices (MALLETT, C.J., and
BOYLE, J.). Four other justices (CAVANAGH, BRICKLEY,
KELLY, and WEAVER, JJ.) reasoned that when a "plain-
tiff alleges that the defect was in the improved por-
tion of the highway, the plaintiff's claim should go
forward." *Id.* at 655 (WEAVER, J., concurring in the
result in *Brown*, but dissenting from the lead opin-
ion's conclusion that neither the state nor a county
owes a duty to a pedestrian while the pedestrian is in
a crosswalk). Accord *id.* at 655-661 (CAVANAGH, J.,
concurring in the result in *Suttles* and dissenting from

the reasoning and holding in *Brown*).[3] With no consensus of opinion on the rule underlying the decision in *Brown*, we are bound only by the result, which affirmed by equal division this Court's peremptory reversal of the circuit court's denial of summary disposition in favor of the defendant municipality and Michigan Department of Transportation. *Suttles, supra.*

*Mason* involved a child who ran into the street and was struck by a car that had just run a red light. *Mason, supra* at 132-133. The *Mason* Court read the "other installations" exclusion as explicitly removing "exclusively pedestrian installations from the highway exception . . . ." *Id.* at 137. The Court reasoned that the "other installations" exclusion "definitively excludes from the exception specific installations whose only rational purposes narrowly service the unique needs of pedestrians." *Id.* at 136. The *Mason* Court then concluded that the language of the exclusion evidenced a legislative intent to treat pedestrians differently from drivers of vehicles:

> The exclusion of crosswalks from the highway exception is consistent with the idea underlying the highway exception—that drivers of vehicles should be able to keep their minds on the traffic, and should not have to worry that dangerous surprises lie ahead. Pedestrians are situated differently than vehicular traffic, which may approach obstacles in the highway too quickly to avoid them, or may avoid obstacles only by jeopardizing traffic in the adjoining lanes. [*Id.* at 137-138.]

---

[3] Justices BRICKLEY and KELLY concurred with Justice CAVANAGH. *Id.* at 661.

Accordingly, the Court concluded, "Pedestrians who trek upon Michigan highways must and do venture beyond the protective mandates of" the highway exception. *Id.* at 137.

The *Nawrocki* Court, however, specifically stated "that *Mason* erred" in reaching this sweeping conclusion. *Nawrocki, supra* at 168.

> In our view, this conclusion ignores the implication of the first and third sentences of the statutory clause, both of which impose a duty upon the state and county road commissions to repair and maintain highways so that they are "reasonably safe and convenient for *public* travel," and results in a much too narrow construction of the statutory clause, thereby completely removing pedestrians from the protection afforded by the highway exception. [*Id.* at 169 (emphasis added by the *Nawrocki* Court).]

*Nawrocki* concluded that "the plain language of the highway exception cannot be construed to afford protection only when a dangerous or defective condition 'of the improved portion of the highway designed for vehicular travel' affects *vehicular* travel." *Id.* at 172 (emphasis in original). In explicitly renouncing the *Mason* Court's reading of the "other installations" exclusion, *Nawrocki* also abolished the persuasive force of the passage in *Mason* now relied on by defendant road commission.

In resolving this appeal, we follow the course set forth by our Supreme Court in *Nawrocki*, i.e., we turn first to the language of the highway exception. Our focus is on the fourth sentence of the highway exception. This sentence creates two location classifications. The first location classification specifically limits the state and county road commissions' general duty to repair and maintain to "only to the improved

portion of the highway designed for vehicular travel
. . . ." The second location classification (the "other
installations" exclusion) excludes these governmental
bodies from the duty thus imposed in the location
classification defined by the following list: "sidewalks,
crosswalks, or any other installation outside of the
improved portion of the highway designed for vehicu-
lar travel."

As *Suttles* observed, the other installations exclu-
sion is at first blush confusing. *Suttles, supra* at 643,
n 5. This confusion, we believe, arises for two rea-
sons: (1) the catch-all provision that concludes the
list, and (2) the tendency to conceptualize crosswalks
according to a modern understanding of the term. A
catch-all provision is usually inserted into a statute to
ensure that the language that immediately precedes it
does not inadvertently omit something that was
meant to be included. *Benedict v Dep't of Treasury,*
236 Mich App 559, 565; 601 NW2d 151 (1999). When
construing a catch-all phrase, courts will interpret it
to include only those things of the same type as the
preceding specific list. This is known as the doctrine
of ejusdem generis. *Brogan v United States,* 522 US
398, 403, n 2; 118 S Ct 805; 139 L Ed 2d 830 (1998)
(" 'Under the principle of *ejusdem generis,* when a
general term follows a specific one, the general term
should be understood as a reference to subjects akin
to the one with specific enumeration.' ") (citation
omitted, emphasis in original); *People v Smith,* 393
Mich 432, 436; 225 NW2d 165 (1975) (observing that
"in a statute in which general words follow a designa-
tion of particular subjects, the meaning of the general
words will ordinarily be . . . construed as restricted

by the particular designation and as including only things of the same kind . . .").

Sometimes the catch-all provision does not include any descriptive terms that serve to limit its scope. For example, "if someone speaks of using 'tacks, staples, screws, nails, rivets, and other things,' the general term 'other things' surely refers to other fasteners." Scalia, A Matter of Interpretation: Federal Courts and the Law (New Jersey: Princeton University Press, 1997), p 26. Other times, the catch-all provision will include limiting language. For example, "in the phrase *horses, cattle, sheep, pigs, goats, or any other barn-yard animal*," Black's Law Dictionary (7th ed), p 535 (emphasis in original), the phrase "barnyard animal" signals the intent to limit the universe of animals covered to those found in a barnyard.[4] Implicit in this second type of catch-all provision is the understanding that there is some type of association between the provision's limiting language and the items specifically listed.

The catch-all provision in issue here is of this second type because it includes the limiting language "outside of the improved portion of the highway designed for vehicular travel." While it is clear how a sidewalk falls within the outlines of the catch-all provision, it is not immediately clear what the association is with a crosswalk. Other than an elevated walkway like those commonly seen near public schools and some busy highways, crosswalks are integrated into the improved portion of the highway designed for vehicular travel. See *Suttles, supra* at 643, n 5

---

[4] Black's observes that in this example, the catch-all provision "would probably be held to include only four-legged, hoofed mammals (and thus would exclude chickens)." Black's, *supra* at 535.

(observing that it is clear that crosswalks do not fit the description, "outside of the improved portion of the highway designed for vehicular travel").

We believe this confusion is born out of a modern understanding of the term "crosswalk." We view a crosswalk as being a particular area within the roadbed itself, instead of being a separate installation. Marked or unmarked, we understand a crosswalk to be a path, usually at the intersection of two roadways, that pedestrians traverse as they cross a street from one side to another. It is clear from the case law, however, that when in 1879 the Michigan Legislature provided for liability against municipalities "in favor of any person 'sustaining bodily injury upon any of the public highways or streets in this state, by reason of neglect to keep such public highways or streets, and all . . . cross-walks . . . on the same in good repair,'" a crosswalk was understood to be something different than it is today. *Roy v Dep't of Transportation*, 428 Mich 330, 336-337; 408 NW2d 783 (1987), quoting 1879 PA 244, 1 How Stat 1442.

At the turn of the 20th century, crosswalks were separate installations in the street that had been "appropriated to and prepared for the use of foot passengers." *O'Neil v Detroit*, 50 Mich 133, 134; 15 NW 48 (1883). For example, in *Williams v Grand Rapids*, 59 Mich 51, 54; 26 NW 279 (1886), the Court noted that resolution of the case turned on the fact "that the city never authorized, built, or constructed a cross-walk" across the street where the plaintiff was injured. "[I]f a cross-walk had existed there," the Court continued, "with a break or hole where the plaintiff stepped, it would have been a case for damages because of a defective cross-walk. Here there was no cross-walk,

and never had been any, except the ground of the street, which people might cross over if they saw fit." *Id.*

Thus, unlike today, a crosswalk was not simply a location in a roadbed. Indeed, crosswalks were not made out of the same material that made up the roadbed. Rather, they tended to be constructed out of large stones and wooden planks. See, e.g., *Dotton v Albion Common Council*, 50 Mich 129, 130; 15 NW 46 (1883) (observing that the plaintiff was injured when "she stepped down through a gap in the cross-walk where several planks were missing and was thrown down and injured"). On today's roadways, crosswalks are made out of the same material as the rest of the roadbed. Further, while there would have been a definite break between a dirt roadbed and a wooden crosswalk, there is no break between the modern crosswalk and the roadbed in which it sits.

Accordingly, when the Legislature reversed the common law and imposed liability on government agencies for failing to keep crosswalks in good repair, a crosswalk was, in reality, an "installation outside of the improved portion of the highway designed for vehicular travel." MCL 691.1402(1). However, when the Legislature wrote the highway exception in 1964, the idea of what constituted a crosswalk had changed. As cars began to replace horses as the common mode of transportation in the 1920s and 1930s, the construction of the roads on which people traveled changed to meet the needs of this new reality. Encompassed within this change was a change in what a crosswalk was understood to be.

This change is actually reflected in the etymology of the word, "crosswalk." In its 1921 edition, *Webster's*

*New International Dictionary.* p 538, defined cross-walk to be "[a] *walk* crossing a street or other way." (Emphasis added.) In 1955, the definition had changed to, "A specially *paved or marked path* cross-ing a street or road, for persons on foot." *Webster's New International Dictionary* (2d ed, 1955), p 633 (emphasis added). Today, the word is defined to mean "a lane marked off for pedestrians to use when crossing a street, as at an intersection." *Random House Webster's College Dictionary* (1997), p 316. In these three definitions can be seen the development from a time when a crosswalk was a separate *walk,* through a time when it could be both a separately *paved path* or just a path *marked* for persons on foot, to today, when all reference to a separately con-structed installation is removed, leaving only the understanding that a crosswalk is a *marked-off lane* for use by pedestrians.

Our Legislature reflected the development of the term in 1949, when it wrote the following definition:

> "Cross-walk" means:
>
> (a) That part of a roadway at an intersection included within the connections of the lateral lines of the sidewalks on opposite sides of the highway measured from the curbs, or in the absence of curbs from the edges of the traversable highway.
>
> (b) Any portion of a highway at an intersection or else-where distinctly indicated for pedestrian crossing by lines or other markings on the surface. [MCL 257.10.]

Subsection 10(a) indicates that a crosswalk is neither only a separate installation nor only a lane marked off on the roadbed. Rather, it simply indicates where the crosswalk is located in space lying between two sections of sidewalk. Both a crosswalk

constructed of wooden planks and a path marked in the roadbed fall under this definition. Indeed, under subsection 10(a) the roadbed that falls in the area set forth is itself understood to be a crosswalk. Subsection 10(b) clearly indicates that a crosswalk exists wherever it is properly marked, regardless of where it falls in the roadbed, and even in the absence of adjoining sidewalks.

However, while the statutory definition of crosswalk encompasses the development of the term, before 1964, the body of case law on crosswalk accidents was all grounded in the prior understanding. Viewed through this historical context, see *Luttrell v Dep't of Corrections*, 421 Mich 93, 108; 365 NW2d 74 (1984), we see the other installations exclusion, in part, as a carefully worded attempt to address this case law, while at the same time accounting for the development of the term, as reflected in the broad language of MCL 257.10(a). In other words, the other installations exclusion serves to create a categorical distinction between two different types of crosswalks, i.e., between a crosswalk that really is an installation separate from the roadbed (e.g., an elevated walkway) and a crosswalk that exists simply as an area within the roadbed.

We believe this reading of the ambiguous fourth sentence of the highway exception also comports with the realities of who built and maintained crosswalks at the turn of the 20th century. Back then, crosswalks were separate installations constructed by municipalities. See *O'Neil, supra* at 134-135 (observing that pursuant to 1879 PA 244, municipalities are responsible for "injuries occasioned by defects . . . in the cross-walks"); *Detroit v Putnam*, 45 Mich 263,

264; 7 NW 815 (1881) (observing that the fourth section of 1879 PA 244 "makes it the duty of such municipalities to keep in good repair . . . crosswalks"). If at the time the highway exception was written, crosswalks that existed as separate installations still were found in Michigan cites,[5] the fourth sentence of the highway exception directed that the state and county road commissions would not be charged with the duty of repairing and maintaining them. See *Nawrocki, supra* at 161 (observing that the fourth sentence of the highway exception, "specifically applicable to the state and county road commissions, proceeds to narrowly limit the general duty to repair and maintain"). Conversely, the state and county road commissions had a duty to repair and maintain any newer crosswalks that were not separate installations, i.e., crosswalks that do not fall "outside of the improved portion of the highway designed for vehicular travel."

Accordingly, we conclude that when a pedestrian alleges that the dangerous defect was in the improved portion of the highway that also happens to fall within the crosswalk, the plaintiff's claim is not barred by governmental immunity. "[T]he plain language of the highway exception cannot be construed to afford protection only when a dangerous or defective condition 'of the improved portion of the high-

---

[5] In *McKellar v Detroit*, 57 Mich 158, 162; 23 NW 621 (1885), the Supreme Court noted that "[i]n the city of Detroit it is estimated that there are more than 10,000 cross-walks inside of the suburbs." Extrapolated over the entire state through the succeeding years, we believe it is possible, indeed probable, that separate installation crosswalks could still be found in the state in 1964. If so, it is reasonable to assume that the legislative representatives for those areas would probably have been very aware of their existence when fashioning the highway exception.

way designed for vehicular travel' affects *vehicular*
travel." *Id.* at 172 (emphasis in original). If the alleged
dangerous condition is "located in the actual roadbed
designed for vehicular travel," then the highway
exception applies and liability can attach. *Id.* at 162.

In the case at hand, plaintiff alleged she was
injured when she tripped and fell over a dangerous
condition in the crosswalk. Because this particular
crosswalk is not an installation separate from the
roadbed, the highway exception applies. Accordingly,
we conclude that with regard to defendant road com-
mission the trial court erred in dismissing this case
pursuant to MCR 2.116(C)(7).

We are aware that in *Nawrocki*, our Supreme Court
noted the following in a footnote:

> We are not unaware of the potential for today's holding to
> result in outcomes that appear illogical or incongruous. For
> example, a pedestrian injured by a dangerous or defective
> condition located within a crosswalk, which is arguably
> integrated into a roadbed, may not be able to plead in
> avoidance of governmental immunity, while a pedestrian
> who steps out of a vehicle, onto the paved or unpaved por-
> tion of the roadbed used by vehicular traffic, and is injured
> by a dangerous or defective condition within the roadbed
> itself, may proceed under the highway exception. However,
> such an anomalous result appears compelled by the lan-
> guage of the highway exception. [*Nawrocki, supra* at 171,
> n 27.]

We do not agree that such an anomalous result is
mandated by the language of the highway exception.
We do not believe that the highway exception man-
dates that pedestrians who happen to be injured by a
defect within the bounds of a crosswalk are com-
pletely removed from the protection afforded by the
highway exception. Footnote 27 seems to imply that

the clear and plain language of the highway exception leads to this incongruous outcome. However, we do not believe that the fourth sentence of the highway exception is clear, and thus have construed it[6] in a way that avoids the incongruous hypothetical in *Nawrocki.*

While we are mindful of the importance carried by judicial dicta coming from the highest appellate court of this state, we nonetheless conclude that we are not bound by the dicta contained in footnote 27. The anomalous result referred to by our Supreme Court was not at issue in *Nawrocki.* In that case, the plaintiff was injured when she "allegedly stepped on cracked and broken pavement on the surface of" a roadbed far removed from any crosswalk. *Id.* at 152. We also note that the *Nawrocki* Court stated that the statutory language "appears" to compel, not does compel, "such an anomalous result . . . ." *Id.* at 171, n 27.

Additionally, we believe the approach suggested by footnote 27 could lead to other illogical or incongruous outcomes not mentioned in the footnote. For example, this approach appears to suggest that a jaywalker could maintain a cause of action for injuries sustained because of tripping over a dangerous defect in a roadbed, while a pedestrian properly using a crosswalk could not plead in avoidance of governmental immunity. Further, while a plaintiff injured when the vehicle he was traveling in struck a dangerous defect in the crosswalk could recover for injuries sustained, a pedestrian injured by this very same

---

[6] *Wisne v Dep't of Treasury,* 244 Mich App 342, 349; 625 NW2d 401 (2001).

defect could not. If neither the pedestrian nor the driver in the above example could proceed under the highway exception, then this could lead to the result that the state and county road commissions could forgo repairing and maintaining the portion of the roadbed found within the bounds of a crosswalk because, arguably, no one could maintain a cause of action against them for failure to do so. We believe our reading of the highway exception precludes any of these illogical outcomes.

We are also aware that our Supreme Court observed in *Roy* that the highway exception "does not extend to injuries which arise from detached, ancillary installations, such as sidewalks, crosswalks, and bicycle paths." *Roy, supra* at 331. "*Roy* involved a plaintiff riding a bicycle on a bicycle path parallel to, but separate from, the roadway actually used by vehicular traffic. The plaintiff suffered injuries when his bicycle struck a bump on the asphalt path." *Nawrocki, supra* at 163. Based, in part, on the definitions of "vehicle" and "highway" found in the "Motor Vehicle Code," *Roy* concluded that the "other installations" exclusion applied: "The exception to governmental immunity is limited to injuries which arise from the agency's failure to repair and maintain the traveled roadway portion of the highway." *Roy, supra* at 331.

To the extent that *Roy* references crosswalks, its pronouncement was merely dictum and thus nonbinding. Further, there is a critical distinction between an injury occurring to an individual traveling on a path running parallel to the improved portion of the highway designed for vehicular travel and an individual

injured while traveling across the improved portion of the highway designed for vehicular travel.

With respect to the city of Berkley, we agree that summary disposition was properly granted because the city did not have jurisdiction over the crosswalk. The governmental immunity act limits liability under the highway exception to the governmental agency having jurisdiction over the highway at the time of the injury. *Markillie v Livingston Co Bd of Co Rd Comm'rs*, 210 Mich App 16, 19; 532 NW2d 878 (1995). Only one governmental agency at a time can have jurisdiction over a highway; there is no concurrent jurisdiction. *Id.* at 20. Here, the Oakland County Road Commission acknowledged its jurisdiction over the crosswalk where plaintiff fell. Further, the city submitted affidavits indicating that the area where plaintiff fell was not within its jurisdiction, but rather was within the jurisdiction of the county road commission. Plaintiff submitted nothing to counter this evidence. Therefore, the trial court properly granted summary disposition in favor of defendant city of Berkley.

Affirmed in part and reversed in part.