*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellant,

v

DERRELL ANDRE RICHARDSON,

Defendant-Appellee.

UNPUBLISHED
January 24, 2019

No. 341836
Genesee Circuit Court
LC No. 17-042113-FH

Before: LETICA, P.J., and CAVANAGH and METER, JJ.

PER CURIAM.

The prosecution appeals as of right the trial court's order dismissing charges of carrying a concealed weapon, MCL 750.227, felon in possession of a firearm, MCL 750.224f, felon in possession of ammunition, MCL 750.224f(6), and two counts of possession of a firearm during the commission of a felony, MCL 750.227b, after the circuit court granted defendant's motion to suppress evidence found during a traffic stop. We reverse and remand for further proceedings.

## I. FACTS

This case arises from a July 17, 2017 traffic stop near the intersection of Mason and Genesee Streets in Flint. Defendant was driving eastbound on Genesee Street, approaching the intersection. At the same time, two Michigan State Police troopers were traveling northbound on Mason Street in their fully-marked police car. Both the traffic stop and the incident preceding it were recorded on the police car's dashboard camera.

The troopers slowed down to avoid a collision with defendant because they believed that he was approaching the stop sign too fast and would drive through it. Yet defendant managed to come to a full stop after partially passing the stop sign on Genesee Street, but before entering Mason Street. At that point, the back third of defendant's car was behind the stop sign and it sat in the space on Genesee Street connecting the sidewalk that runs parallel to Mason Street. After stopping, defendant turned right onto Mason Street.

The officers subsequently pulled defendant over for failing to stop at a stop sign, MCL 257.649, failure to use a turn signal, MCL 257.648, and impeding traffic, MCL 257.676b. During the course of the traffic stop, the officers found a gun and ammunition, which led to the criminal charges. Defendant moved to suppress the evidence obtained from the traffic stop. He argued the stop was unjustified because the troopers lacked reasonable suspicion to believe that his actions were unlawful.

At the evidentiary hearing, Sergeant Jeff Juneac, who was driving the police car, testified that he observed defendant, who was traveling 15 to 20 mph, drive "past the stop sign, past the crosswalk, right up into" the intersection. Sergeant Juneac explained that he "slowed right down thinking he [defendant] was coming right through the intersection." Thereafter, defendant made a right-hand turn and Sergeant Juneac testified that he did not observe defendant's turn signal on. Sergeant Juneac turned the patrol car around, activated its lights, and stopped defendant's car. In later review of the dashboard video, Sergeant Juneac believed defendant's turn signal came on as defendant was making the right turn. Sergeant Juneac clarified that, after review of the dashboard video, he believed that defendant "was starting a turn and I saw a blinker I believe. It wasn't prior to the turn that I saw [it]." The three infractions Sergeant Juneac observed were failure to stop at the stop sign, impeding traffic, and failure to use a turn signal.

Trooper Craig Winnie, who was the passenger in the police car, testified that he too saw defendant's car approaching the stop sign "at a high rate of speed" and that it passed the stop sign before coming to an abrupt stop. After defendant's car made its turn southbound, Sergeant Juneac turned their patrol car around to follow it. Trooper Winnie did not observe whether defendant's car had its turn signal activated because he was "on the computer getting ready to punch in the license plate." Trooper Winnie observed defendant stop beyond the stop sign, "blocking the sidewalks, so impeding pedestrian traffic." On cross-examination, Trooper Winnie admitted that it was possible defendant's turn signal was on prior to his turning southbound. He also admitted that there were no pedestrians in the area at the time that defendant stopped beyond the stop sign so no pedestrian traffic was, in fact, impeded. Contrary to Sergeant Juneac, Trooper Winnie testified that defendant did not impede them because they were travelling in a different direction.

After being detained in the police car, defendant asked if he could inquire about why he was stopped. Trooper Winnie responded: "Yup, 'cuz you almost ran a stop sign. You were impeding traffic."

Following the witness testimony, defense counsel argued that defendant completely stopped at the stop sign in a location that did not impede either pedestrian or vehicular traffic and that his turn signal had been activated. The prosecution argued that as long as the troopers had a reasonable suspicion of a violation based on their observations—whether or not they were mistaken—the traffic stop should be upheld. Defense counsel referred the court to the dashboard video and argued that it was clear that defendant came to a complete stop, that his car did not

impede the van[1] that was travelling southbound, and that defendant had his turn signal on. Even so, the troopers stopped him.

The trial court noted that Sergeant Juneac testified that he believed defendant's blinker was not on before he made the traffic stop but admitted that, after he saw the video, he began to question himself as to whether defendant's turn signal was on. The court stated that it would watch the video but noted that the video was going to have to show that Sergeant Juneac was not telling the truth. In reviewing the video, the court initially opined: "I can't tell from the video if there was a blinker being used or if that was sunlight reflecting off the grill." After repeatedly watching the video, including with the aid of a magnifying glass, the court stated that it would review the video again later and make its decision.

The court subsequently entered an opinion, holding that "[a] close view of the video shows defendant's right turn signal was blinking" and "[t]he officer was not mistaken about the blinker, because he testified he saw the signal as defendant was turning." Further, there was "no showing that defendant was impeding traffic" and defendant did, in fact, come "to a complete stop." The court concluded: "It appears the troopers jumped to the wrong conclusion before they saw the blinker and acted too quickly. The totality of the circumstances of the stop reveals that [the] troopers lacked reasonable suspicion to believe defendant was engaged in illegal conduct." Accordingly, the court suppressed the evidence after determining the traffic stop was invalid. The court later entered an order dismissing the charges against defendant arising from the suppressed evidence. This appeal followed.

## II. DISCUSSION

The prosecution argues that the trial court erred when it suppressed the evidence obtained during the traffic stop. We agree.

We review the trial court's factual findings for clear error and its interpretation of the law de novo. *People v Dunbar*, 499 Mich 60, 66; 879 NW2d 229 (2016); *People v Williams*, 472 Mich 308, 313; 696 NW2d 636 (2005). "A finding of fact is clearly erroneous if, after a review of the entire record, an appellate court is left with a definite and firm conviction that a mistake has been made." *People v Roberts*, 292 Mich App 492, 502; 808 NW2d 290 (2011) (quotation marks and citation omitted).

Detaining a motor vehicle constitutes a seizure for Fourth Amendment purposes. See *People v Dillon*, 296 Mich App 506, 508; 822 NW2d 611 (2012). To effectuate a valid traffic stop, "a police officer must have an articulable and reasonable suspicion that a vehicle or one of its occupants is subject to seizure for a violation of law." *People v Hyde*, 285 Mich App 428, 436; 775 NW2d 833 (2009) (quotation marks and citation omitted). See also *People v Yeoman*, 218 Mich App 406, 410; 554 NW2d 577 (1996). The determination whether police had a "reasonable suspicion to justify a stop must be made on a case-by-case basis, evaluated under the

---

[1] Counsel omitted mention of the police vehicle, which the trooper slowed and stopped in anticipation of defendant driving through the stop sign.

totality of the circumstances, and based on common sense." *Dillon*, 296 Mich App at 508. If a driver violates a portion of the Michigan Vehicle Code (MVC), MCL 257.1 *et seq.*, in a manner constituting a civil infraction, the officer may stop and detain the vehicle. *Dunbar*, 499 Mich at 66; MCL 257.742(1).

MCL 257.649(8) instructs a driver where to stop his vehicle at a stop sign. In pertinent part, it reads:

> Except when directed to proceed by a police officer, the driver of a vehicle approaching a stop intersection indicated by a stop sign *shall stop before entering the crosswalk on the near side of the intersection*, or if there is not a crosswalk shall stop at a clearly marked stop line; or if there is not a crosswalk or a clearly marked stop line, then at the point nearest the intersecting roadway where the driver has a view of approaching traffic on the intersecting roadway. [Emphasis added.]

MCL 257.10 defines a crosswalk, describing it as:

> (a) That part of a roadway at an intersection included within the connections of the lateral lines of the sidewalks on opposite sides of the highway measured from the curbs, or in the absence of curbs from the edges of the traversable highway.
>
> (b) Any portion of a highway at an intersection or elsewhere distinctly indicated for pedestrian crossing by lines or other markings on the surface.

MCL 257.10(a) makes plain that, when a sidewalk is present at an intersection, the lateral lines that connect both parts of the sidewalk become a crosswalk. Such an intersection does not need to be indicated by any sort of markings to qualify as a crosswalk. The presence of the marking requirement as a separate way to identify a crosswalk in MCL 257.10(b) shows that no markings are required for an area to be considered a crosswalk under MCL 257.10(a). *Sebring v City of Berkley*, 247 Mich App 666, 678-679; 637 NW2d 552 (2001).

By using the word "crosswalk" in MCL 257.649(8) and defining it in MCL 257.10(a), the Legislature directed a driver approaching a stop sign to stop before the point where the sidewalk meets the road. See also *People v McIntosh*, 23 Mich App 412, 417; 178 NW2d 809 (1970) (" 'Where an applicable statute or ordinance designates specifically where the stop should be made, it is, of course controlling.' "), quoting 3 ALR3d 180, 215. If a driver stops after the point where the sidewalk meets the road then he encroaches on the area "within the connections of the lateral lines of the sidewalks on opposite sides of the highway" that create a crosswalk under MCL 257.10(a), and violates MCL 257.649(8).

Here, the dash camera video clearly shows a sidewalk running parallel to Mason Street as well as defendant's failure to stop his car until it occupied the space between the sidewalks. Even though there are no markings on Genesee Street to note the presence of a crosswalk, a crosswalk nevertheless exists under MCL 257.10(a), occupying the space on Genesee Street that

-4-

connects the two sidewalks. See *Sebring*, 247 Mich App at 678-679. Because defendant did not stop his car before reaching this area, he violated MCL 257.649(8).

The testimony of both troopers and the audio on the dash cam video indicates that the troopers stopped defendant for failing to properly stop at a stop sign. By focusing on the fact that defendant eventually stopped, the trial court legally erred in concluding the troopers had no valid reason to stop defendant. This error led the circuit court to further err by suppressing the evidence found during the traffic stop and subsequently dismissing all charges against defendant.[2]

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Anica Letica
/s/ Patrick M. Meter

---

[2] Because the officers had reasonable suspicion to pull over defendant for violating MCL 257.649(8), discussion of whether they had reasonable suspicion to stop him for other violations is moot. See *People v Richmond*, 486 Mich 29, 34; 782 NW2d 187 (2010) (noting that an appellate court will generally "not reach moot questions or declare principles or rules of law that have no practical legal effect in the case before it") (quotation marks and citation omitted); *People v Kavanaugh*, 320 Mich App 293, 299; 907 NW2d 845 (2017) ("[W]hen there is probable cause to believe that a driver has violated a traffic law, it is constitutional to briefly detain the driver for purposes of addressing the violation even if the officer's subjective intent for stopping the car is based on other factors.").