*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

TRINITY HEALTH CORPORATION,

        Plaintiff-Appellant,

v

EMERGENCY PHYSICIANS MEDICAL GROUP, PC,

        Defendant-Appellee.

UNPUBLISHED
July 25, 2024

No. 364952
Washtenaw Circuit Court
LC No. 22-000483-CB

Before: JANSEN, P.J., and REDFORD and D. H. SAWYER*, JJ.

PER CURIAM.

Plaintiff appeals by right the trial court's order granting defendant's motion for summary disposition under MCR 2.116(C)(8) (failure to state a claim) and denying its motion for summary disposition under MCR 2.116(C)(10) (no genuine issue of material fact). We affirm.

## I. FACTUAL BACKGROUND

Plaintiff is an Indiana nonprofit corporation that is the parent company of several hospitals, and defendant is a professional corporation that employs medical professionals. In 2016, the parties agreed to have defendant provide emergency-room professionals to work in plaintiff's hospitals. The parties executed a Master Services Agreement (MSA) to govern this relationship.

Section XIV of the MSA governed "Indemnification and Insurance." Section XIV(A) provided as follows:

> Indemnification. Each party (the **"Indemnifying Party"**) shall indemnify, defend and hold harmless the other party, including, but not limited to, such other party's officers, employees, directors and agents (collectively, the "Indemnified Party"), from and against all liability, claims, losses, damages and expenses, including reasonable legal fees and expenses, arising solely from the Indemnifying Party's acts and omissions in the performance of its duties and obligations under this Agreement. In such an event, the Indemnified Party shall have the option either of providing its own defense for which Indemnifying Party shall promptly pay the

*Former Court of Appeals judge, sitting on the Court of Appeals by assignment.

-1-

Indemnified Party its reasonable cost and expenses or the Indemnified Party may tender the defense to the Indemnifying Party which shall assume it.

Section XIV(D) provided as follows:

> Employment/Contracting Indemnification. Group will indemnify and hold harmless Trinity Health and Hospital from any claim directly or indirectly related to this Agreement, the Order, or otherwise against Trinity Health or the Hospital based on medical staff privileges, scheduling, employment, contract for services, workers' compensation, unemployment compensation, vacation pay, sick leave, retirement benefits, social security benefits, disability insurance benefits, un-employment insurance benefits, or any other benefits, damages, or claims of a Provider.

The MSA defined "Order" as the specific agreement between defendant and a given hospital, and "Provider" as an individual medical practitioner employed by defendant and working in one of plaintiff's hospitals under the MSA. In 2017 an Order went into effect for Mercy Hospital and Medical Center (Mercy) in Chicago, Illinois.

Dr. Tamara O'Neal was a physician working as an employee for defendant at the time relevant. Defendant assigned her to Mercy under the terms of the MSA and Order. Her former fiancé was Juan Lopez. On November 19, 2018, Lopez went to Mercy and waited for O'Neal to finish her shift. O'Neal completed her shift, and walked to the Mercy parking lot to leave. Lopez confronted her, and began chasing her through the parking lot. He then shot and killed O'Neal, along with two others.

The estates of O'Neal and the two other victims initiated wrongful-death and negligence lawsuits in Illinois, which were consolidated into one proceeding. The named defendants were Mercy, plaintiff, and plaintiff's security company for Mercy, SDI Security, Inc. The Illinois suit included allegations that plaintiff was negligent by failing to approach Lopez in Mercy's lobby, relying on improperly trained SDI Security employees, failing to take proper security measures as the situation developed, and failing to properly train Mercy's employees on lockdown procedures. The suit also alleged that SDI Security was negligent in its failure to approach or otherwise intervene. The lawsuit's claims were not attributable to the professional relationship between O'Neal and Mercy, but instead on general duties of care applicable to anyone at the hospital.

Plaintiff sent a letter to defendant formally demanding that defendant indemnify it "for all costs, expenses, and liability resulting from the shooting deaths." Defendant responded with a letter denying indemnification. Plaintiff filed a complaint in Oakland Circuit Court, claiming that the refusal to indemnify was a breach of the MSA. Plaintiff sought damages, and a declaratory judgment that defendant must indemnify plaintiff "for any and all costs, expenses, and liability related to Dr. O'Neal's presence at [Mercy] on November 19, 2019." The Oakland Circuit Court ordered the case transferred to Washtenaw Circuit Court.

The parties then filed cross-motions for summary disposition. Plaintiff argued that language in both § XIV(A) and (D) of the MSA supported indemnification, and defendant argued

to the contrary. At the hearing on the motions, the trial court requested more information about the origins of the § XIV language, but neither party provided any more such information, and neither appears to have any intention or ability to do so.

The trial court ultimately granted defendant's motion and denied plaintiff's. The trial court ruled that § XIV(A) did not grant indemnity because "Defendant's acts and/or omissions are not the sole reason for the Illinois lawsuit," and that § XIV(D) did not grant indemnity because "Plaintiff fails to give effect to the terms 'based on' and 'sole,' " and because "the catch-all language relates back to employee benefit claims and does not extend to cases brought which claim negligence on the part of Plaintiff." This appeal followed.

## II. ANALYSIS

The sole question in this case is the proper interpretation of § XIV of the MSA. No facts are disputed. Both parties claim that the language in the two subsections at issue is unambiguous, and that no further factual development is needed to shed light on their meanings.

On appeal, plaintiff argues that Section XIV(D) of the MSA was clearly meant to cover more than employee benefits claims, as indicated by both by its text and a comparison with other provisions of the contract. Therefore, plaintiff holds that the trial court erred in viewing it as only covering employee benefits, and by adding the word "solely" when that word was not in that subsection. Additionally, plaintiff asserts that the trial court improperly concluded that plaintiff failed to state a claim, on the ground that the MSA did not protect plaintiff from plaintiff's own negligence. Specifically, Section XIV(A) provides an independent basis for indemnification, requiring indemnification as long as the claim arose from defendant's acts under the MSA. We shall address the award of summary disposition as it relates to each section separately.

A trial court's decision on a motion for summary disposition is reviewed de novo. *Wood v Detroit*, 323 Mich App 416, 419; 917 NW2d 709 (2018). The proper interpretation of a contract is also an issue we review de novo. *Rory v Continental Ins Co*, 473 Mich 457, 464; 703 NW2d 23 (2005).

MCR 2.116(C)(8) authorizes summary disposition when "[t]he opposing party has failed to state a claim on which relief can be granted." When reviewing a decision on a (C)(8) motion, we rely "on the pleadings alone, and all well-pleaded factual allegations in a complaint are taken as true, as well as any reasonable inferences or conclusions that can be drawn from the allegations." *Peters v Dep't of Corrections*, 215 Mich App 485, 486; 546 NW2d 668 (1996). "A court may only grant a motion pursuant to MCR 2.116(C)(8) where the claims are so clearly unenforceable as a matter of law that no factual development could possibly justify recovery." *Wade v Dep't of Corrections*, 439 Mich 158, 163; 483 NW2d 26 (1992).

MCR 2.116(C)(10) authorizes summary disposition when "[e]xcept as to the amount of damages, there is no genuine issue as to any material fact, and the moving party is entitled to judgment or partial judgment as a matter of law." When reviewing a decision on a (C)(10) motion, we consider affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties in the light most favorable to the nonmoving party. *Johnson v VanderKooi*, 502 Mich 751, 761; 918 NW2d 785 (2018). When the record leaves open an issue upon which reasonable minds

may differ, a genuine issue of material fact exists. *Id.* "[I]f a word or phrase is unambiguous and no reasonable person could differ with respect to application of the term or phrase to undisputed material facts, then the court should grant summary disposition to the proper party pursuant to MCR 2.116(C)(10)." *Henderson v State Farm Fire & Cas Co*, 460 Mich 348, 353; 596 NW2d 190 (1999).

## A. SECTION XIV(A)

Plaintiff argues that the Illinois lawsuit arose "solely from [defendant's] acts and omissions in the performance of its duties and obligations" under the MSA. We disagree.

"When effectuating the intentions of parties to an unambiguous contract, the court looks only to the unambiguous terms of the contract and the intention expressed therein." *Zurich Ins Co v CCR & Co (On Rehearing)*, 226 Mich App 599, 605; 576 NW2d 392 (1997). "[C]ourts must also give effect to every word, phrase, and clause in a contract and avoid an interpretation that would render any part of the contract surplusage or nugatory." *Klapp v United Ins Group Agency, Inc*, 468 Mich 459, 468; 663 NW2d 447 (2003).

"An indemnity contract is construed in the same fashion as are contracts generally." *Zurich Ins Co*, 226 Mich App at 603. "Michigan law provides contracting parties with broad discretion in negotiating the scope of indemnity clauses." *Miller-Davis Co v Ahrens Constr, Inc*, 495 Mich 161, 173; 848 NW2d 95 (2014). As with any other contract, our primary task in construing a contract for indemnification is to give effect to the parties' intention at the time they entered into the contract. We determine the parties' intent by examining the language of the contract according to its plain and ordinary meaning. In doing so, we avoid an interpretation that would render any portion of the contract nugatory. *Id.* at 174 (citations omitted).

"Michigan courts have discarded the additional rule of construction that indemnity contracts will not be construed to provide indemnification for the indemnitee's own negligence unless such an intent is expressed clearly and unequivocally in the contract." *Sherman v DeMaria Bldg Co, Inc*, 203 Mich App 593, 596-597; 513 NW2d 187 (1994). "Instead, broad indemnity language may be interpreted to protect the indemnitee against its own negligence if this intent can be ascertained from 'other language in the contract, surrounding circumstances, or from the purpose sought to be accomplished by the parties.' " *Id.* at 597, quoting *Fischbach-Natkin Co v Power Process Piping, Inc*, 157 Mich App 448, 452; 403 NW2d 569 (1987).

For § XIV(A) of the MSA, the disagreement centers on the language that indemnifies only those claims "arising solely from the Indemnifying Party's acts and omissions in the performance of its duties and obligations under this Agreement." Plaintiff is correct that the MSA factored into the incident underlying the Illinois lawsuit in the broadest sense. Lopez was at Chicago's Mercy Hospital to confront O'Neal, and O'Neal was in that parking lot because she had just completed a shift working for defendant under the terms of the MSA and attendant Order. But we must determine how broad the net cast by the above language is, given the presence of the word "solely." Plaintiff argues that the language requires only that a claim exist because of the MSA to qualify for indemnification, and that the only claims not covered are those that would have come about even without the MSA.

-4-

Plaintiff reads that subsection as calling for indemnification in response to mere but-for causation. Plaintiff does not adequately explain why the subsection included the word "solely" at all if this were the proper interpretation. Moreover, the language of § XIV(A) would not necessarily apply to this situation even if "solely" were omitted. The complaint underlying the Illinois lawsuit at issue claimed that plaintiff, and the security company it hired, were negligent in several ways. It made no claims about any failing on the part of defendant. Considering such a claim as "arising" from defendant's acts, merely because defendant staffed O'Neal, requires a strained reading of the contract language. The Illinois litigation in fact arose from plaintiff's and SDI Security's alleged behavior, or failure to act.

Moreover, use of the word "solely" makes clear that indemnification was limited to claims that focused on defendant's MSA responsibilities, and not on claims that had only a strained or incidental connection to the MSA. Plaintiff has not argued that defendant failed any duties or responsibilities outlined in the MSA that would have bearing on this case. Section XIV(A) focused on situations where one of the instant parties was facing a lawsuit whose claims related to matters that were ultimately the responsibility of the other party. The responsibility to indemnify the costs of the defense in such a suit was reasonable. That such suits might arise would not be unusual, given that aggrieved litigants could be easily confused about whom to target when plaintiff operated the hospital, but some of the medical professionals working there were employed by defendant.

In fact, the interpretation plaintiff urges would extend to any lawsuit involving an MSA employee, no matter if plaintiff's sole negligence caused the entire basis of the action. This interpretation not only would not comport with the contract language, but would render the subsection nonsensical. Section XIV(A) of the MSA established the responsibility of "[e]ach party" to indemnify. Accordingly, if the broad hook of O'Neal's being defendant's employee working under the MSA were enough to trigger indemnification from defendant, that broad hook would equally relate to O'Neal's working at plaintiff's hospital under the MSA to trigger indemnification from plaintiff. If § XIV(A) granted indemnification to plaintiff, defendant could immediately turn around and itself invoke § XIV(A) to demand indemnification from plaintiff. Such a turnaround indemnification request would be fully backed by plaintiff's reasoning. Because plaintiff's interpretation of § XIV(A) does not comport with the intent behind that subsection as indicated by its language, and would bring about a nonsensical result, we conclude that § XIV(A) does not provide for indemnification in this case.

## B. SECTION XIV(D)

Plaintiff also argues that § XIV(D) mandates indemnification because the Illinois lawsuit fell under the categories listed. We disagree.

Any terms not defined in a contract should be given their plain and ordinary meaning, which may be determined by consulting dictionaries. *McGrath v Allstate Ins Co*, 290 Mich App 434, 439; 802 NW2d 619 (2010). The canon *ejusdem generis* provides that when "general words follow a designation of particular subjects, the meaning of the general words will ordinarily be presumed to be and construed as restricted by the particular designation and as including only things of the same kind, class, character or nature as those specifically enumerated." *Rott v Rott*, 508 Mich 274, 299 n 11; 972 NW2d 789 (2021) (quotation marks and citations omitted). "If the

general term [following a series of specific words] were given its full and natural meaning, it would include the objects designated by the specific words, making the latter superfluous." *Belanger v Warren Consol Sch Dist, Bd of Ed*, 432 Mich 575, 584; 443 NW2d 372 (1989). Accordingly, under *ejusdem generis*, when specific words create a class, accompanying general words embrace everything in, but only in, that class. *Id*. at 583. "A catch-all provision is usually inserted into a statute to ensure that the language that immediately precedes it does not inadvertently omit something that was meant to be included." *Sebring v City of Berkley*, 247 Mich App 666, 674; 637 NW2d 552 (2001). "When construing a catch-all phrase, courts will interpret it to include only those things of the same type as the preceding specific list." *Id*.

Under the doctrine of *noscitur a sociis*, "a word or phrase is given meaning by its context or setting." *G C Timmis & Co v Guardian Alarm Co*, 468 Mich 416, 420; 662 NW2d 710 (2003) (quotation marks and citation omitted). "Although a phrase or a statement may mean one thing when read in isolation, it may mean something substantially different when read in context." *Id.* at 421. "Words will be given their usual and customary meanings, save as otherwise defined, and, in seeking meaning, words and clauses will not be divorced from those which precede and those which follow." *Sanchick v Michigan State Bd of Examiners in Optometry*, 342 Mich 555, 559; 70 NW2d 757 (1955). " 'It is a familiar principle of statutory construction that words grouped in a list should be given related meaning.' " *G C Timmis & Co*, 468 Mich at 421-422, quoting *Third Nat'l Bank in Nashville v Impac Ltd, Inc*, 432 US 312, 322; 97 S Ct 2307; 53 L Ed 2d 368 (1977).

As plaintiff correctly notes, the trial court, while discussing § XIV(D), characterized the Illinois lawsuit as not being based "solely" upon defendant's actions, when the word "solely" is actually relevant to only § XIV(A).

However, the trial court nonetheless correctly found that § XIV(D) did not provide indemnification, because the Illinois litigation needed to be "based on" one of the listed categories, and because the inclusion of a catchall did not expand those categories to include necessarily any conceivable such claim. Plaintiff argues that the Illinois case fell under "employment," "contract for services," "workers' compensation," or the catchall "any other damages, or claims." Plaintiff's interpretation of these categories is too broad. The specified categories were "medical staff privileges, scheduling, employment, contract for services, workers' compensation, unemployment compensation, vacation pay, sick leave, retirement benefits, social security benefits, disability insurance benefits, [and] unemployment insurance benefits."[1] The commonality of the enumerated categories reveals that the subsection was intended to cover typical aspects of the employer-employee relationship.

"Employment" may be defined as "[t]he relationship between master and servant," "[t]he act of employing," "[t]he quality, state, or condition of being employed; the condition of having a paying job," or "[w]ork for which one has been hired and is being paid by an employer." *Black's Law Dictionary* (11th ed). Plaintiff's primary argument is that "employment" and the catchall should be broadly construed. Plaintiff contends that "employment," along with the catchall,

---

[1] The trial court harmlessly characterized the 12 enumerated categories as involving "employee benefits," when four of them—"medical staff privileges, scheduling, employment, [and] contract for services"—only very indirectly fit that description.

encompasses the Illinois litigation because O'Neal was at Chicago's Mercy Hospital that day because of her employment. But this logic would also cover any claim relating to O'Neal's being on or near Mercy's premises during, or close to, working hours. Such a reading might be supported if the term "employment" appeared in a context with other broad words distinct from the work sphere, because "employment" could then reasonably be thought to encompass everything at least remotely related to it. Instead, the words providing the actual context all dealt with much more specific sub-activities which fell well within the concept of employment. The broad definition plaintiff uses would make no sense, because "employment" would be the third term among 11 others that are easily included within it. If "employment" were broad enough to include claims arising from a gunman coming to the hospital with violent intentions, it would obviously also include claims arising from benefits or scheduling. The much more natural reading of "employment," in the context of the other 11 enumerated terms, indicates claims based upon the details or existence of a medical professional's employment. Under such a proper understanding, as informed by the canon of *ejusdem generis*, the catchall did not expand the subsection to cover matters only tangentially connected to O'Neal's being at Mercy near work times. The catchall instead covered "only those things of the same type as the preceding specific list," and other claims relating to the particulars of the employment relationship. See *Sebring*, 247 Mich App at 674.

Nor were "contract for services" or "workers' compensation" the bases of the Illinois litigation. Suits arising from the "contract for services" should be limited in the same way as those arising from "employment." And the Illinois suit was not a workers'-compensation action. The inclusion of "workers' compensation" in § XIV(D) did not universally implicate all matters relating to safety and security. But notably, of the 12 enumerated terms, the only ones touching on safety or injury were "workers' compensation," "sick leave," and "disability insurance benefits." This only confirms that § XIV(D) was focused on claims of the sort customarily arising within the employer-employee relationship, and was not intended to cover other ways a medical professional might be hurt on plaintiff's property. We therefore agree with the trial court that § XIV(D), although not limited to "employee benefits claims," remained limited—to claims involving aspects of the employer-employee relationship. Recognizing this limitation is the most logical way of discerning the parties' intentions: defendant is the actual employer, so those types of issues trigger indemnification. But expanding the subsection to include defendant's indemnification for suits that allege that plaintiff made errors in how it responded to an intruder's threat of violence goes well beyond the language of the subsection.

Plaintiff relies on *Buffa v Gen Motors Corp*, 131 F Supp 478, 484-485 (ED Mich, 1955), for the proposition that § XIV(D) can require indemnification even if plaintiff is facing negligence allegations. Plaintiff's alleged negligence was not the issue concerning § XIV(D), however: the issue was that the Illinois litigation was not attributable to any of the 12 specified categories, or one sufficiently similar to come under the catchall. Further, the indemnification clause at issue in *Buffa* was clearly broad, *Buffa*, 131 F Supp at 481, not restricted as in this case by the specification of certain areas. Section XIV(D) is thus clearly distinguishable from the contract at issue in *Buffa*.

Affirmed.

/s/ Kathleen Jansen
/s/ James Robert Redford
/s/ David H. Sawyer

-7-